## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

WILLIAM JOSEPH CHAMP,     )
        )
      Plaintiff,     )
        )
v.        )     **Case No. 08-CV-744-PJC**
        )
MICHAEL J. ASTRUE, Commissioner of the     )
Social Security Administration,     )
        )
      Defendant.     )

## OPINION AND ORDER

Claimant, William Joseph Champ ("Champ"), pursuant to 42 U.S.C. § 405(g), requests

judicial review of the decision of the Commissioner of the Social Security Administration

("Commissioner") denying Champ's application for disability benefits under the Social Security

Act.  In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed

before a United States Magistrate Judge.  Any appeal of this order will be directly to the Tenth

Circuit Court of Appeals.  Champ[1] appeals the decision of the Administrative Law Judge

("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that

Champ was not disabled.  For the reasons discussed below, the Court **AFFIRMS** the

---

[1]    Champ's Opening Brief did not comply with the formatting requirements of the Local Rules of this District and the Scheduling Order issued by this Court. Dkt. #7.  Counsel for Champ elected to give citations to the record before the ALJ, rather than citations to the record before this Court, as required by the Scheduling Order, Paragraph 2A(1):  "Plaintiff should include specific references to the record."  Additionally, while it is customary to include these references in the text of the brief itself, counsel instead used endnotes, a choice which did not assist this Court with its review of this matter.  Moreover, the font of the endnotes was not the required 12 pitch font. See L. Cv. R. 7.2 (c).  These noncompliant formatting choices of counsel were not helpful to this Court's review, and counsel is admonished to correct all of these aspects of formatting in future filings.

Commissioner's decision.

## Claimant's Background

At the time of the hearing before the ALJ on January 28, 2008, Champ was 30 years old. (R. 296).  He completed eleventh grade, and he obtained a GED.  *Id.*

Champ testified that he had been working doing painting and cleaning duties for a remodeling company for a couple of months before the hearing.  (R. 296-97).  He could work for 40 hours a week for a month at a time, but then he would experience swelling to the point that he could not move, and he would go to the hospital for medical treatment.  (R. 298-99).  Champ testified that he did not understand the medical reasons for his condition, but he understood that his condition was related to his liver and that his doctors had recommended that he get on a list for liver transplants.  (R. 300-01).

Champ testified that he could not sit for extended periods due to swelling, tingling, and pain through his lower back and down to his feet.  (R. 305).  He could sit for 45 minutes to one hour.  (R. 306).  He could stand for perhaps 45 minutes to two hours, depending on the swelling in his feet.  (R. 307).  He testified that he was not taking pain medication because he could not afford it.  (R. 307).  He could walk to take the trash out, with a rolling trash can, but when he returned to the house, he would need to take a break, and he estimated this distance as 200 yards.  (R. 308).  His son weighed less than 30 pounds, but he could not reach over to lift him.  (R. 309-10).

Champ was hospitalized at St. John Medical Center from April 5-9, 2003.  (R. 92-105, 607-96).  His admitting diagnoses were parapharyngeal swelling, uncontrolled diabetes mellitus type 1, leukocytosis, and hypertension.  (R. 607).  His discharge diagnoses were parotitis with associated parapharyngeal soft tissue swelling, diabetes mellitus type 1, currently in good control,

and hypertension, resolved. *Id.*

Champ was admitted to Saint Francis Hospital from February 2-6, 2006. (R. 447-72, 482-500). According to the discharge summary, the diagnoses on discharge were suspected acute hepatitis B infection, essential hypertension, labile diabetes mellitus, history of splenectomy, resolving urinary tract infection, generalized anxiety disorder, and chronic low back pain. (R. 465). The summary had an extensive discussion of abnormal serologic tests during Champ's stay in the hospital. (R. 465-66). During the hospitalization, chest x-rays were unremarkable, and an abdominal ultrasound showed hepatomegaly. (R. 463-64). On February 6, 2006, one of the physicians who treated him during the hospitalization, Christopher J. Pitcock, D.O., wrote a note stating: "Please excuse Mr. Champ from work until further notice because of his recent hospitalization." (R. 448).

Champ was examined by agency consultant Steve Y. M. Lee, M.D. on April 19, 2006. (R. 501-06). At the time of this examination, Champ's chief complaint was pain in his legs. (R. 501). Upon examination, Dr. Lee found no abnormalities, including no swelling of any extremity. (R. 501-02). Champ's range of motion and strength were normal. *Id.*

Champ was hospitalized at the Oklahoma State University Medical Center on February 16-17, 2007, with chief complaints of parotitis, hepatitis B, and facial swelling. (R. 976-1045). The discharge summary discussed his laboratory results while in the hospital. (R. 988). Champ was then hospitalized at Saint Francis Hospital from February 20-24, 2007, after he developed an infection of his left forearm at the IV site from his previous hospitalization. (R. 1085-1182). His discharge diagnoses were cellulitis of the left forearm, diabetes, hepatitis B, renal insufficiency, hypertension, and tobacco abuse. (R. 1086).

According to the records of R. Michael Eimen, D.O., Champ saw Dr. Eimen once in

1994, and then in 2003 regarding a surgical scar on his chest.  (R. 1055-58).   Champ saw Dr.

Eimen twice in 2006 regarding a burn on his leg and apparently regarding an injury to his

shoulder.  (R. 1049, 1051).   On May 4, 2006 and October 18, 2006, Dr. Eimen wrote notes

stating: "Mr. Champ is under medical care and is unable to work at this time."  (R. 1050, 1052).

On April 6, 2007, Champ presented to the St. John Medical Center emergency room for

pain on his right side, shoulder, and elbow from falling down stairs.  (R. 80-91).  On June 29,

2007, Champ presented to the Saint Francis Emergency Room with a complaint of low back pain

following a fall down stairs.  (R. 1064-84).

Champ was hospitalized at St. John Medical Center from September 19-22, 2007.  (R.

47-79).  The discharge summary states that the admission diagnoses were scrotal abscess,

diabetes mellitus type 1, and anasarca.[2]  (R. 47).  One discharge diagnosis was scrotal abscess

status post incision, and the culture was MRSA positive.  *Id.*  Other discharge diagnoses were

uncontrolled, diabetes mellitus, with a noncompliant patient, nephrotic/nephritic syndrome with

anasarca, and chronic hepatitis B infection.  *Id.*

Champ was hospitalized at Integris Baptist Medical Center on April 9, 2008.  (R. 158-

292).  The reason for admission was listed as ascites,[3] cirrhosis, and diabetes.  (R. 161).  A

progress note dated April 18, 2008 explained Champ's progress and the results of a kidney

biopsy that showed possible diabetic nephropathy as the cause of his nephrotic syndrome.  (R.

205).  A report of a liver needle biopsy dated April 24, 2008, appears to show chronic hepatitis

---

[2]      Anasarca is defined as "[s]evere generalized edema."   Taber's Cyclopedic Medical
Dictionary 94 (17th ed. 1993).

[3]      Ascites is defined as "[t]he accumulation of serous fluid in the peritoneal cavity."  Taber's
Cyclopedic Medical Dictionary 159 (17th ed. 1993).

with cirrhosis.  (R. 44-46).

On July 25, 2008, Robert H. Blee, M.D. made a report to the Appeals Council through a one-page memorandum.  (R. 37).  In the memorandum, Dr. Blee describes its purpose as a review of the evidence from the period February 6, 2006 to the date of the memorandum, to determine whether Champ "met or equaled any listing, relating to his diabetes, or chronic Hepatitis."  *Id.*  Dr. Blee briefly reviewed the evidence of Champ's nephrotic syndrome and anasarca at the time of the September 2007 and April 2008 hospitalizations, and he concluded that Champ "clearly meets Listing 6.06A as of approximately September 1, 2007."  *Id.*  He continued by saying that there was no evidence of the persistent edema before that time, and his opinion was that Champ "had the residual functional capacity for a full range of light work" for the period before September 1, 2007.  *Id.*

### Procedural History

On February 13, 2006, Champ filed applications for disability insurance benefits and supplemental security income under Title II, 42 U.S.C. § 401 *et seq.*  (R. 19).[4]  In these applications, Champ alleged disability beginning February 1, 2006.  Champ's applications for benefits were denied in their entirety initially and on reconsideration. (R. 334-37, 341-46).  A hearing before ALJ Lantz McClain was held January 28, 2008, in Tulsa, Oklahoma.  (R. 293-326).  By decision dated February 28, 2008, the ALJ found that Champ was not disabled at any time through the date of the decision. (R. 19-28).  On August 12, 2008, the Appeals Council granted review based on new evidence.  (R. 39-42).  On October 10, 2008, the Appeals Council

---

[4]     The record is almost 1200 pages long, and the Court has been unable to locate copies of the applications in that record.  The citation is to the ALJ's decision in which he recounts Champ's applications.

issued a partially favorable decision.  (R. 1-9).   In the Appeals Council decision, Champ was

found to be disabled as of September 1, 2007 due to his meeting Listing 6.06A.  (R. 7).  The

Appeals Council found Champ not disabled for the period between his asserted disability date of

February 1, 2006 through August 31, 2007.  *Id.*  Therefore, the Appeals Council decision

represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §

404.981.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment." 42 U.S.C. § 423(d)(1)(A).   A claimant is disabled under the Act only if his

"physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability

claim.  20 C.F.R. § 404.1520.[5]  *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

---

[5]     Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").   A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform.

(detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'"  *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

### Decisions of the Administrative Law Judge and the Appeals Council

The ALJ found that Champ met insured status through December 31, 2007.  (R. 21).  At Step One, the ALJ found that Champ had not engaged in any substantial gainful activity since his alleged onset date of February 1, 2006.  *Id.*  At Step Two, the ALJ found that Champ had severe impairments of diabetes mellitus; status post injuries in several motor vehicle accidents; history of back surgery; splenectomy; and hypertension.  *Id.*  At Step Three, the ALJ found that Champ's impairments did not meet any Listing.  (R. 21).

---

*See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

The ALJ determined that Champ had the RFC to perform the full range of light work.  (R. 24).  At Step Four, the ALJ found that Champ could not return to past work.  (R. 27).  At Step Five, the ALJ used the Grids[6] to determine that Champ was not disabled at any time through the date of his decision.  *Id.*

The Appeals Council granted review and, in its decision, adopted the ALJ's decision as to the period prior to September 1, 2007.  (R. 5).  As of September 1, 2007, the Appeals Council found that Champ met Listing 6.06A, and therefore was disabled as of that date.  (R. 7).  The Appeals Council found that Champ was not disabled for the period up to September 1, 2007.  *Id.*

## Review

Champ's complaints relate to the ALJ's RFC determination[7] and credibility assessment. Champ asserts that he did not have the RFC to perform the full range of light work prior to September 1, 2007.  In his brief, Champ briefly reviews the medical evidence from 2006 and early 2007, at times making references to exhibits that include more than one hundred pages, and at times referencing exhibit numbers that appear to be mistaken completely.[8]  Champ states that a

---

[6]     The Grids are the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2.

[7]     Champ's first argument appears to be merely that the Appeals Council adopted the ALJ's RFC determination, and it does not specify what was erroneous about that determination. Plaintiff's Opening Brief, Dkt. #13, p. 2-3.  To the extent that Champ intended this item to be separate and distinct from his general argument regarding the ALJ's RFC determination, that argument was waived for failure to develop it adequately before this Court. *See Zumwalt v. Astrue*, 220 Fed. Appx. 770, 776-77 (10th Cir. 2007) (waiver principles apply in Social Security disability context, including failure to raise and preserve issues before the district court).

[8]     For example, Champ cites to Exhibit 14F for the statement that Champ "continued to experience swelling and pain through January of 2007."  Plaintiff's Opening Brief, Dkt. #13, p. 3.  Exhibit 14F encompasses pages 939-1045 of the record before this Court.  Such a vague reference does not allow this Court to give meaningful review to Champ's argument. Champ cites to Exhibit 6F for the proposition that Champ's "history of physical symptoms"

liver test in February 2006 demonstrated that his condition was severe under the Code of Federal Regulations, but Champ does not give a cite to the CFR so that this Court could have notice of what severity index Champ was referring to.  For the fact of the liver test results, Champ cites to Exhibit 16F, an exhibit of 122 pages.  (R. 1064-1185).  These perfunctory statements regarding Champ's medical records, with vague references to lengthy exhibits, are not developed arguments that this Court can review in a meaningful way.  *See Wall v. Astrue*, 361 F.3d 1048, 1066 (10th Cir. 2009) (perfunctory presentation of argument by claimant deprived the district court of the opportunity to analyze and rule on issue); *Zumwalt*, 220 Fed. Appx. at 776-77 (waiver rules apply in Social Security disability context when issues are not sufficiently preserved).

Champ does cite specifically to what he refers to as an opinion by Dr. Eimen that Champ was "unable to work."  (R. 1050).  The document referred to is literally one sentence stating that "Mr. Champ is under medical care and is unable to work at this time."  *Id.*  This is not a treating physician opinion, and nothing about it gives any indication of what Champ's impairments were and what the effects of any impairments were on Champ's functional abilities.  *See Cowan v. Astrue,* 552 F.3d 1182, 1188-89 (10th Cir. 2008).

The Tenth Circuit in *Cowan* explained that a "true medical opinion" was one that contained a doctor's "judgment about the nature and severity of [the claimant's] physical limitations, or any information about what activities [the claimant] could still perform."  *Id.* at 1189.  Thus, the court found that a statement by the treating physician that the claimant had a

---

had caused him to "alter life patterns significantly."  Plaintiff's Opening Brief, Dkt. #13, p.3. Exhibit 6F is a Mental Impairment Questionnaire completed by Joe C. Fermo Jr. M.D.  (R. 513-17).  There is a checklist that includes the language used in Plaintiff's Opening Brief, but it appears that box was not checked by Dr. Fermo.  (R. 515).

stroke "and I feel he may never return to work" was not a true medical opinion.  *Id.  See also Martinez v. Astrue,* 316 Fed. Appx. 819, 822-23 (10th Cir. 2009) (unpublished) (ALJ did not need to provide specific legitimate reasons for rejecting portion of treating physicians letter that contained only generalized statements); *Mann v. Astrue*, 284 Fed. Appx. 567, 570 (10th Cir. 2008) (unpublished) (treating physician recommendation that the claimant see an orthopedic specialist was not a treating physician opinion because it did not address functional limitations). These problems with Dr. Eimen's succinct statements were noted by the ALJ in his decision.  (R. 26).  Champ's citation to the one-sentence document of Dr. Eimen does not establish that the ALJ was in error in determining that Champ could perform light work before September 1, 2007. The ALJ's RFC determination was supported by substantial evidence, and none of Champ's arguments establish that there was any legal error in that determination.

**Credibility Determination**

Champ raises several issues regarding the ALJ's credibility analysis, but the undersigned concludes that the ALJ's discussion and analysis in his decision were adequate.   Credibility determinations by the trier of fact are given great deference.  *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White,* 287 F.3d at 910.  In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186.

The ALJ gave several specific reasons for his finding that Champ lacked credibility.  He

first cited specific testimony of Champ that he had sought treatment in the month before the hearing, and the ALJ noted the lack of any medical evidence reflecting that treatment.  (R. 26). The ALJ compared the statements of Champ regarding back problems with the medical evidence. *Id.*  The ALJ compared the statements that Champ made to consulting examiner Dr. Lee with the results of Dr. Lee's examination.  *Id.*  While Champ described pain and swelling, Dr. Lee did not find pain or swelling.  *Id.*  The ALJ cited to one medical report in which a doctor had stated that Champ's pain issues appeared to be out of proportion to his condition.  *Id.*  These were all specific legitimate reasons supporting the ALJ's credibility determination.

Champ does not attack any of the reasons given by the ALJ, except that he claims that the ALJ specifically made reference to Champ's statements regarding swelling.  Plaintiff's Opening Brief, Dkt. #13, p. 4.  As reviewed above, the ALJ did compare Champ's complaints regarding swelling with the lack of findings by Dr. Lee, and this was a legitimate, specific reason supporting the ALJ's credibility assessment.  Instead of arguing that the ALJ's reference was not legitimate, Champ's strategy for attacking the ALJ's credibility determination is to again briefly recount some of the medical evidence.  Plaintiff's Opening Brief claims that Champ "was ordered to refrain from working until further notice due to the extremities [sic] of his condition." *Id.*  Plaintiff's reference is to Exhibit 1F which includes the note from Dr. Pitcock asking that Champ please be excused from work because of his recent hospitalization.  (R. 448).  Plaintiff's characterization of this evidence is hardly accurate, given that Dr. Pitcock's note says nothing about "ordering" Champ to do anything and says nothing about the severity of Champ's condition.  Dr. Pitcock's note in no way undermines the ALJ's credibility determination.

The same is true of the notes from Dr. Eimen, which are also cited by Champ in his discussion of the ALJ's credibility determination.  As stated before, the ALJ noted the problems

11

with Dr. Eimen's notes in that they did not specify any details regarding Champ's condition and there were no treatment records corresponding with the dates of the notes.  (R. 26).  Dr. Eimen's work excuse notes do not undermine the ALJ's credibility determination.  *Id.*

The ALJ's credibility determination was adequate.  *Mann*, 284 Fed. Appx. at 571 (finding credibility determination adequate when ALJ discussed three points).  Champ's arguments regarding credibility constitute "an invitation to this court to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner," and the undersigned declines that invitation.  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).   The ALJ's credibility determination was supported by substantial evidence and was in compliance with legal requirements.

All of the arguments made by Champ essentially are that Champ would like for this Court to give more weight to the portions of the medical record that are in his favor and less weight to those portions that disfavor his claim of disability.

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and brackets omitted).

Here, even if the medical evidence could be viewed as conflicting, the view of the Commissioner, as expressed by the decision of the ALJ and the decision of the Appeals Council, is supported by substantial evidence.  In his brief, Champ does not refer to the opinion evidence of Dr. Blee, whose opinion was instrumental in granting Champ benefits beginning September 1, 2007, because Dr. Blee found that the medical evidence established at that point that Champ met the listing for nephrotic syndrome, with asarca.  Dr. Blee stated that he had reviewed the medical

evidence and that Champ retained the ability to do a full range of light work prior to September 1, 2007.  (R. 37).  With Dr. Blee's opinion, and the other medical evidence of record, there was substantial evidence to support the conclusion of the ALJ and the Appeals Council that Champ was not disabled for the period prior to September 1, 2007.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  The decision is **AFFIRMED**.

Dated this 25th day of February, 2010.

Paul J. Cleary
United States Magistrate Judge